IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MANSICALCO, ) | |
| ) | |
| Plaintiff, ) | No. 09 C 0901 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| GURNEE POLICE OFFICERS JAY SIMON, ) | |
| JEFFREY HAUPTMAN, and McDONALD'S ) | |
| RESTAURANTS OF ILLINOIS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a one-count second amended complaint against defendants McDonald's Restaurants of Illinois ("McDonald's") and Gurnee Police Officers Jay Simon ("Simon") and Jeffrey Hauptman ("Hauptman"), alleging a civil conspiracy to violate his Fourth Amendment rights pursuant to 42 U.S.C. § 1983. McDonald's and the officers have filed the instant motions for summary judgment. For the reasons stated below, defendants' motions are granted.

## BACKGROUND

Unless otherwise specified, the following facts are undisputed. Plaintiff owns a restaurant in Gurnee where, on the night of March 25, 2007, he hosted a birthday party for Illinois State Senator Terry Link. At 11:30 p.m., plaintiff took a one-and-a-half ounce shot of Patrón tequila. The party ended around 12:30 a.m. Plaintiff left the restaurant at 1:00 a.m. and drove across the street to Steven's Restaurant, where at approximately 1:15 a.m., he drank another one-and-a-half ounce shot of Patrón. Around 1:30 or 1:40 a.m., he drove to a McDonald's. The car he was driving was registered to Shelly Goodwin, his then-fiancé.

A McDonald's employee, Fidel Castro, testified that an unidentified Gurnee police officer pulled into the drive-through moments before plaintiff arrived. Castro further testified

that the officer handed Castro a piece of paper with at least four digits of the license plate on the car plaintiff was driving; Castro handed it to a coworker, Fernando Guzman.[1]

One minute later, plaintiff arrived at McDonald's, pulled into the drive-through and ordered food from Guzman, who swore at him in Spanish and did not give plaintiff his change. Plaintiff testified that he said to Guzman, "what is your problem," "aren't you happy working here," and "why are you F-ing with me?" Plaintiff then moved forward to the second window and waited for his food. Castro began to give plaintiff his food, but suddenly pulled the bag back. Plaintiff became irritated and said "give me my F-ing food." Guzman and Johanna Escobar, the restaurant manager, both testified that plaintiff grabbed Guzman's wrist; plaintiff disputes that he touched any McDonald's employee. The employees closed the drive-through window. As plaintiff pulled away, Guzman wrote down the license plate number of the car plaintiff was driving. Escobar told Guzman to call the Gurnee Police, and Guzman complied.

---

[1] Plaintiff states that McDonald's video surveillance footage also shows a police officer handing a piece of paper to Castro. Defendants Hauptman and Simon argue that this video is inadmissible because it lacks foundation and authentication, and therefore the court should not consider it. See Woods v. City of Chi., 234 F.3d 979 (7th Cir. 2000). The video footage is ultimately not relevant in the court's decision to grant defendants' summary judgment motions.
But, in any event, the court agrees that it lacks proper authentication and should not be considered. As plaintiff's counsel stated in deposing a witness, Johanna Escobar, he received the video from plaintiff, and "believe[d] that this material was furnished by McDonald's to my client during his trial [for driving under the influence]." Plaintiff testified that his DUI attorney gave him the video and that he was able to play it "one time quickly" and "was unable to watch it ever again" because the video is in an unusual format that makes it difficult to play. (The court experienced the same difficulty and was unable to view the video.) Plaintiff further testified that "some lady in Germany somewhere on the Internet had a program and I was able to download it and I was able to watch the video for the first time and able to scrutinize the video."

A dispatcher notified the Gurnee Police that a crime may have been committed at the McDonald's plaintiff had visited. Defendant Hauptman received the dispatch and was given a description, which included the license plate number and make of the car plaintiff was driving. Hauptman also testified that he was given an initial physical description of the offender, describing him as a white male in his 40s of Italian descent, and wearing a suit. The dispatch ordered Hauptman to go to the McDonald's and investigate the incident.

At the McDonald's, either Guzman or Escobar provided Hauptman with a physical description of plaintiff. Guzman told Hauptman that plaintiff had grabbed him by the wrist, and Escobar also described the incident.

Officer Olds (who is not a party to this action) made the initial traffic stop of plaintiff. Olds recognized plaintiff, whom he knew as a well-known businessman in the community. Olds contacted Hauptman and told him he had pulled over the car identified in the dispatch. Before Olds told Hauptman that it was plaintiff who had been pulled over, Olds asked, "you know who it is, don't you?" Based on the descriptions provided by the dispatcher and Guzman or Escobar, and the address of the car's registration, Hauptman correctly guessed that it was "Tony." Before this evening, Hauptman knew of plaintiff's activity in the community, his personality, and where he lived. Olds replied: "How come everybody knows but me?" Because Hauptman was the officer initially assigned to the dispatch, he ordered Olds to arrest plaintiff.

Shortly thereafter, defendant Simon arrived at the traffic stop. Before arriving at the traffic stop, Simon did not know who was in the vehicle. Simon testified that he observed plaintiff stumble out of his car and slur his speech, and noticed a moderate scent of alcohol on plaintiff's breath.

3

At that point, plaintiff was taken into custody and his vehicle was inventoried. When plaintiff arrived at the police station, he was taken to the booking room. Hauptman arrived and introduced himself to plaintiff. At the station, plaintiff swore at Hauptman and another officer and called them "clowns." Simon conducted three field sobriety tests. Plaintiff then refused to take a breathalyzer test. Following the field sobriety tests, Simon formed the opinion that plaintiff was intoxicated and charged plaintiff with driving under the influence.

Plaintiff was charged with driving under the influence and disorderly conduct. Plaintiff testified that, after the McDonald's employees failed to appear in court to testify against him, the disorderly conduct charge was dismissed in May 2007. Approximately 16 months after the incident, plaintiff was charged with battery. After a trial, plaintiff was acquitted of battery and driving under the influence on December 18, 2008.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to

4

determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelly & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994).

**II.     Officers Hauptman and Simon's Motion for Summary Judgment**

To establish a civil conspiracy claim under § 1983, a plaintiff must show that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003) (internal citation and quotations omitted). Because plaintiff has failed to establish a genuine dispute of material fact as to whether the arrest violated his Fourth Amendment rights, he has not presented evidence sufficient to survive summary judgment.

To defeat summary judgment on a civil conspiracy claim, plaintiff must show a dispute of material fact regarding an underlying constitutional violation. See Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."); Cartwright v. City of Chi., slip. op., 2010 WL 5313764, at *5 (N.D. Ill. Dec. 17, 2010) ("[B]ecause plaintiff cannot show an underlying constitutional violation, her . . . civil conspiracy claim[] fail[s]."). The uncontroverted evidence shows that Hauptman and Simon had probable cause to arrest plaintiff and charge him with disorderly conduct and driving under the influence. Therefore, they did not violate his constitutional rights and could not have conspired to do so.[2]

---

   [2] Plaintiff fails to address this argument (which Hauptman and Simon raised in their opening brief), likely because there is no possible response.

The uncontroverted evidence shows that Hauptman had probable cause to order plaintiff's arrest and later charge him with disorderly conduct. Plaintiff has admitted that he swore at the McDonald's employees; Guzman testified that plaintiff attempted to grab him, swore, and was generally disruptive; Escobar testified that she called the police because plaintiff was going to come through the drive-through window; and Castro testified that plaintiff was disruptive. The evidence demonstrates that Hauptman's investigation at the McDonald's, through which he learned of plaintiff's disruptive behavior and was told that plaintiff had grabbed an employee by the wrist, provided him with "reasonably trustworthy information . . . to warrant a prudent man in believing that the suspect had committed or was committing an offense." Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996) (stating standard for police officer's probable cause to arrest). The offense here, disorderly conduct, occurs when one "does any act in such unreasonable manner as to alarm or disturb another and to provoke breach of the peace." 720 Ill. Comp. Stat. 5/26-1. According to the evidence the parties have presented, it is undisputed that the officers had reliable information that plaintiff was disturbing the McDonald's employees and provoking breach of the peace, in violation of Illinois law.

Further, no genuine dispute of fact exists as to whether Simon had probable cause to charge plaintiff with driving under the influence. The only suggestion that probable cause did not exist for this charge comes from plaintiff's conclusory testimony that he thought he "did well" in the field sobriety tests. See Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003) ("[C]onclusory statements in the deposition do not create an issue of fact.") (citation omitted); Johnson v. Univ. of Wisconsin-Eau Claire, 70 F.3d 469, 482 (7th Cir. 1995) (noting that the plaintiff's "unsupported conjecture is not competent evidence"). It is undisputed that plaintiff

6

had been drinking; plaintiff testified that he had three ounces of tequila from 11:30 .p.m. to 1:15 a.m. It is also undisputed that plaintiff refused to participate in a breathalyzer test. Finally, and most importantly, it is undisputed that Simon decided to charge plaintiff with driving under the influence based on his opinion, formed after conducting the field sobriety tests, that plaintiff was intoxicated.

Moreover, the only evidence plaintiff offers that Hauptman and Simon conspired with McDonald's and its employees is Fidel Castro's testimony that an unidentified officer—not Hauptman or Simon—drove to the McDonald's and handed him a piece of paper bearing four numbers corresponding to four numbers on the license plate of the car plaintiff was driving that night. No evidence, direct or circumstantial, connects Hauptman and Simon to that event. Plaintiff has acknowledged as much.[3] Thus, for a reasonable jury to find that Hauptman and Simon conspired to deprive plaintiff of his Fourth Amendment rights, they would need to rely on pure speculation.[4]

For these reasons, the court grants Hauptman and Simon's motion for summary judgment.

### III. McDonald's Motion for Summary Judgment

For the same reasons the court grants defendants Hauptman and Simon's motion for summary judgment, the court grants McDonald's motion for summary judgment. Even if

---

[3] At his deposition, plaintiff was asked: "Other than Fidel Castro's testimony, what evidence do you have that any McDonald's employees conspired with the Gurnee Police Department to have you arrested?" He responded: "I didn't grab anybody." Plaintiff then elaborated: "I don't have anybody else telling me they were in cahoots with the police."

[4] Because no factual dispute exists as to whether there was probable cause for plaintiff's arrest, the court need not reach the issue of qualified immunity.

plaintiff had, however, presented some evidence that his constitutional rights were violated, summary judgment for McDonald's would be appropriate. There is no basis for its liability, because "[s]ection 1983 will not support a claim based on a respondeat superior theory." Polk Co. v. Dodson, 454 U.S. 312, 325 (1981); accord Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982) ("[A] a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). To establish a § 1983 claim against McDonald's, plaintiff would need to present evidence of an "impermissible policy" or "'constitutionally forbidden' rule" that served as the "moving force" of the alleged constitutional deprivation. Iskander, 690 F.2d at 128, citing Dodson, 454 U.S. at 326, and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Plaintiff, however, points to no such policy or rule.

Rather, plaintiff petitions the court to change the Seventh Circuit's well-established precedent on respondeat superior liability for private defendants to § 1983 actions. Although plaintiff maintains that there are "non-frivolous grounds for modifying the present legal doctrine protecting private corporations from respondent [sic] superior liability," the court's task is to follow directly applicable Supreme Court and Seventh Circuit precedent. See Bingham v. New Berlin Sch. Dist., 550 F.3d 601 605, citing Hutto v. Davis, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent [ ] must be followed by the lower federal courts.").

Plaintiff further contends that because McDonald's failed to raise its respondeat superior argument as an affirmative defense, the court cannot consider it now. Plaintiff is incorrect. See Fed. R. Civ. P. 8(c)(1) (listing affirmative defenses, not including absence of vicarious liability).

8

Moreover, even if plaintiff were correct, plaintiff was placed on notice of this defense when McDonald's included it in its answer to plaintiff's second amended complaint.

## CONCLUSION

For the foregoing reasons, the court grants all motions for summary judgment.

**ENTER:** May 19, 2011

_____
**Robert W. Gettleman**
**United States District Judge**